**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Equal Employment Opportunity Commission,<br><br>              Plaintiff,<br><br>vs.<br><br>HealthHelp, Inc.,<br><br>              Defendant,<br><br>Janis Hagy, Carolyn Johnson, and Arlene Warren,<br><br>              Intervenor Plaintiffs.<br>_____<br>Janis Hagy, et al.,<br><br>              Plaintiffs,<br><br>vs.<br><br>HealthHelp, Inc.<br><br>              Defendant.<br>_____ | No. CV-03-1204-PHX-RGS<br>No. CV-03-1216-PHX-RGS<br><br>**ORDER** |

      Pending before the Court are Defendant HealthHelp, Inc.'s Motion for Summary Judgment [Doc. # 59] and Plaintiff EEOC's and Plaintiff/ Intervenors Janis Hagy's, Carolyn Johnson's, and Arlene Warren's (collectively "Plaintiffs'") Motion to Strike Defendant's "Objections to Intervenors' Separate Statement of Facts" [Doc. # 71].

1  Following oral argument held on August 30, 2005, the Court took the matter under
2  advisement. Having considered the parties' written and oral arguments, as well as the
3  applicable law, for the reasons set forth below, the Court will deny Defendant's Motion
4  for Summary Judgment and grant Plaintiffs' Motion to Strike Defendant's "Objections to
5  Intervenors' Separate Statement of Facts".[1]

6  I.     BACKGROUND

7      Defendant HealthHelp, Inc. partners with health care providers to manage
8  radiology services for a number of insurers. [Doc. # 59, p. 2] Plaintiff/Intervenors
9  Carolyn Johnson, Janis Hagy, and Arlene Warren were employees in HealthHelp's
10 Phoenix office in the Spring of 2001. [*Id.*] Ms. Warren was the quality assurance
11 manager at HealthHelp. [Doc. # 63, Exh. C, p. 11] Ms. Warren reported to Ms. Hagy,
12 who was the executive director of the clinical staff. Ms. Hagy reported to Ms. Johnson,
13 who was a vice-president of the company. Ms. Johnson reported to the company
14 president, Cherrill Farnsworth. [Doc. # 59. p. 2]

15     During this time, Donna Baker-Miller was director of business development and
16 worked in the Phoenix office. [Doc. # 63, Exh. D, pp. 13-14] Paul Tufano was a
17 company vice-president who was responsible for the human resources department. In this
18 capacity, he supervised human resources manager Angela Hightower Dick. Both Mr.
19 Tufano and Ms. Dick worked in HealthHelp's corporate headquarters in Houston. [Doc. #
20 63, Exh. E, p. 12; Exh. A, p. 3]

21     On May 1, 2001, Plaintiffs allege that Ms. Baker-Miller came to the office of Janis
22 Hagy and Arlene Warren and told them that they could not hire "Blacks or Jews" for a
23 contract being implemented in Oregon. [Doc. # 63, Exh. B, p. 18] Janis Hagy objected to
24 Ms. Baker-Miller, stating that such a requirement would violate federal law. [Doc. # 63,
25 Exh. B, pp. 19-20] Ms. Baker-Miller stated that Blue Cross Blue Shield of Oregon had

---

[1] Accordingly, the Court has not considered any material presented in Defendant's pleading in reaching its decision.

- 2 -

1  advised her and company president Cherrill Farnsworth that such a policy was a
2  contractual requirement. [*Id.*] Ms. Hagy responded that she could not violate federal law.
3  [Doc. # 63, Exh. B, p. 20]
4        The following day, Ms. Warren and Ms. Hagy met with Ms. Johnson and reported
5  Ms. Baker-Miller's alleged discriminatory directive. [Doc. # 63, Exh. B, pp. 23-24; Exh.
6  C, pp. 22, 27-28] Ms. Hagy asked Ms. Johnson for direction on the matter, and Ms.
7  Johnson advised her to call human resources in Houston. Accordingly, the next day, Ms.
8  Hagy called Angela Dick on the speaker phone from Ms. Johnson's office. Ms. Dick was
9  aware that Ms. Johnson also was on the call. Ms. Hagy reported her concern that the
10 directive was a discriminatory practice. [Doc. # 63, Exh. L, pp. 91-93] Ms. Dick advised
11 Ms. Hagy that the company would not require her to discriminate and stated that she
12 would contact her supervisor, Paul Tufano, on the issue. [Doc. # 63, Exh. B, p. 25]
13       Shortly thereafter, while sitting next to Ms. Johnson in Ms. Johnson's parked car,
14 Ms. Hagy received a call from Paul Tufano on her cellphone. Ms. Hagy related the
15 conversation with Ms. Baker-Miller. Mr. Tufano suggested that the job description could
16 be re-written to allow only males between twenty-five and thirty years of age to be
17 eligible for the position. Ms. Hagy informed him that to do so also would be
18 discriminatory. Mr. Tufano responded that the company job descriptions could be written
19 as deemed appropriate by the company. [Doc. # 63, Exh. B, pp. 28-29] Ms. Hagy replied
20 that she could not discriminate in her hiring. [Doc. # 63, Exh. B, p. 29] Mr. Tufano
21 advised Ms. Hagy that he needed to speak to Blue Cross Blue Shield regarding the matter
22 and that he would get back to her, which, according to Ms. Hagy, he did not do. [*Id.*]
23       Approximately two months later, in June 2001, Ms. Johnson, Ms. Hagy, and Ms.
24 Warren were terminated from their employment by HealthHelp. [Plaintiffs' Complaint,
25 Doc. # 1, ¶ 7(c)] On June 24, 2003, the EEOC filed the instant lawsuit, in which Ms.
26 Johnson, Ms. Hagy, and Ms. Warren subsequently intervened as Plaintiffs. Plaintiffs
27 allege that they were terminated in retaliation for opposing discriminatory hiring practices
28

1  in violation of Title VII of the Civil Rights Act of 1964 and Title I of the Civil Rights Act
2  of 1991.

3  On November 30, 2004, HealthHelp filed a Motion for Summary Judgment,
4  arguing that there is no evidence that Ms. Warren or Ms. Johnson opposed the alleged
5  directive, therefore neither party can demonstrate "that she was engaged in an activity
6  protected under Title VII which caused her to be terminated." Accordingly, HealthHelp
7  requests the Court to "enter summary judgment in its favor on the claims of plaintiff
8  EEOC and intervenor plaintiffs Carolyn Johnson and Arlene Warren."

9  II.    STANDARD OF REVIEW

10  A court must grant summary judgment if the pleadings and supporting documents,
11  viewed in the light most favorable to the non-moving party "show that there is no genuine
12  issue as to any material fact and that the moving party is entitled to judgment as a matter
13  of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  A
14  material fact is one "that might affect the outcome of the suit under the governing law . . .
15  ." *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 248 (1986).  A dispute is genuine "if
16  the evidence is such that a reasonable jury could return a verdict for the non-moving
17  party." *Id*.  The court must resolve all ambiguities and draw all reasonable inferences in
18  favor the non-moving party. *Provenz v. Miller*, 102 F.3d 1478, 1483 (9th Cir. 1996).

19  A principal purpose of summary judgment is "to isolate and dispose of factually
20  unsupported claims." *Celotex*, 477 U.S. at 323-24.  Summary judgment is appropriate
21  against a party who "fails to make a showing sufficient to establish the existence of a
22  element essential to that party's case, and on which that party will bear the burden of
23  proof at trial." *Id*. at 322.  The moving party need not disprove matters on which the
24  opponent has the burden of proof at trial. *Id*. at 317.  The party opposing summary
25  judgment "may not rest upon the mere allegations or denials of [the party's] pleadings, but
26  . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R.
27  Civ. P. 56(e); *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 585-88 (1986).
28

III.     DISCUSSION

Section 704(a) of the Civil Rights Act of 1964 prohibits retaliation against any employee who opposes unlawful discrimination.  42 U.S.C. § 2000e-3(a)(1976).  A *prima facie* case is established if the plaintiff demonstrates that (1) she has engaged in activity protected under Title VII; (2) she has suffered an adverse employment action; and (3) there is a causal link between the protected expression and the adverse action.  *Ray v. Henderson*, 217 F.3d 1234, 1240 (9th Cir. 2000).  In its motion, HealthHelp argues that Ms. Warren and Ms. Johnson did not oppose the alleged discrimination and therefore cannot establish the first element of a *prima facie* case.

<u>Plaintiff Arlene Warren</u>

HealthHelp concedes that Ms. Warren expressed her concerns about Ms. Baker-Miller's alleged discriminatory directive to Ms. Hagy and Ms. Johnson. [*See* Doc. # 59, p. 3]  Indeed, the record confirms her actions:

> Q:     BY MR. HOVER:
>
> After this incident where Donna Baker-Miller came in and gave you that alleged directive, did you object to it to anybody within the HealthHelp organization?
>
> A:     Janis Hagy
>
> Q:     Anybody else?
>
> A:     Carolyn Johnson
>
> . . .
>
> Q:     And do you remember what you told Janis Hagy specifically with regard to your objection to that supposed directive?
>
> A:     That is was against the law.

[Doc. # 63, Exh. C, pp. 27-28]

HealthHelp appears to argue, without any citation to authority, that because Ms. Warren did not "talk[] to anyone *in Houston* personally about the alleged directive," she did not engage in a protected activity by opposing the alleged unlawful discrimination.  [*See* Doc. # 59, p. 4 (emphasis added)].  The Court disagrees that it was necessary for Ms.

- 5 -

1  Warren to complain to corporate headquarters about the alleged discrimination in order to
2  establish the first element of her *prima facie* case.  Ms. Warren properly objected to her
3  immediate supervisor, Janis Hagy, as well as to company vice-president Carolyn Johnson.
4  Accordingly, resolving all ambiguities and drawing all reasonable inferences in favor the
5  non-moving party, *see Provenz v. Miller*, 102 F.3d at 1483, the Court concludes that a
6  reasonable jury could find that Arlene Warren engaged in protected activity under Title
7  VII and will deny HealthHelp's Motion for Summary Judgment with respect to this
8  Plaintiff.

Plaintiff Carolyn Johnson

10    HealthHelp argues that Carolyn Johnson's testimony does not establish that she
11  raised any opposition to the alleged directive from Donna Baker-Miller; rather, according
12  to HealthHelp, it establishes only that she was present during telephone conversations
13  between Janis Hagy and members of management in Houston.  Specifically, HealthHelp
14  cites the conversation between Janis Hagy and Angela Dick, noting that Ms. Johnson
15  testified in her deposition that she listened to said conversation on the speaker phone in
16  her office but did not recall if she participated therein.  [*See* Doc. # 59, Exh. A, p. 93]
17  HealthHelp also cites the call received by Janis Hagy from Paul Tufano while she was
18  seated in Ms. Johnson's car.  HealthHelp argues that "Ms. Johnson did not recall the
19  specifics of that conversation nor testify that she participated by opposing the alleged
20  directive." [*See* Doc. # 59, p.5]  In support of this argument, HealthHelp cites Ms.
21  Johnson's testimony regarding a memo written by Paul Tufano dated May 3, 2001, which
22  allegedly summarized their conversation that day. [Doc. # 59, Exh. A, pp. 161-166]  A
23  review of this testimony reveals that Ms. Johnson stated that she indeed had a
24  conversation with Mr. Tufano regarding the alleged discriminatory directive, although she
25  disagreed that the memo documented the substance of this conversation:

26    Q.    . . . Is it true that on May 3, you may have talked to him [Paul
            Tufano] about this incident you've dated May 1?
27
      A.    We did.
28          . . .

- 6 -

| | | |
|---|---|---|
| 1 | Q. | Did you have a conversation with him on May 3, perhaps? |
| 2 | A. | He called back wanting to know what occurred. |
| 3 | Q. | Okay. |
| 4 | A. | And we reported it exactly as we've said before. |
| 5 | Q. | But you're saying this [memo] doesn't document that conversation? |
| 6 | A. | Doesn't appear to me that it does. |

[*Id.*, pp. 163, 165]

In addition, Paul Tufano testified that he received a call from Carolyn Johnson expressing her concern regarding Donna Baker-Miller's directive:

> Q. Can you tell me the first thing you ever heard about this incident that occurred?
>
> . . .
>
> A. Okay. . . . Carolyn called me and had communicated to me that Ms. Baker communicated to the clinical staff that there were issues related to the hiring of African Americans and individuals of Jewish descent as it related to our hiring in the Regence Oregon contract based upon her - "her" being Donna Baker's experience or knowledge of hate groups in the Oregon area. And . . .
>
> Q. Go ahead.
>
> A. And Ms. Johnson shared her concern because she was involved with the recruiting. She was actually leading the recruiting effort for the staff related to this contract. She was concerned that what was being represented by Ms. Baker was not our corporate policy and that she and her staff were being asked to do something that didn't make sense to her. And I had communicated to her - "her" being Carolyn Johnson - I said, "Look, the company's policy is very clear. We hire the most qualified person with the skill set we are looking for regardless of race, color, creed, or religion or ethnic background, period. . . ."
>
> . . .
>
> Q. Okay. Why would Carolyn have called you concerning this issue?
>
> A. I guess two reasons: one, because I am a fellow officer, and, two, I had a reasonable relationship with Carolyn. I thought she was very professional, and I felt that that conversation was due to that relationship that we had; is that she was concerned and she called, as well as the fact that I was responsible for Human Resources through Angela Dick.

[Doc. # 63, Exh. E, pp. 9-12]

- 7 -

1       Accordingly, resolving all ambiguities and drawing all reasonable inferences in
2   favor the non-moving party, *see Provenz v. Miller*, 102 F.3d at 1483, the Court concludes
3   that a reasonable jury could find that Carolyn Johnson engaged in protected activity under
4   Title VII; HealthHelp therefore is not entitled to summary judgment with respect to this
5   Plaintiff.
6   IV.     CONCLUSION
7       For the reasons set forth above,
8       **IT IS ORDERED** denying Defendant HealthHelp, Inc.'s Motion for Summary
9   Judgment. [Doc. # 59]
10      HealthHelp having filed an appropriate Reply Brief conforming to the
11  requirements set forth in LRCiv 7.2 of the Rules of Practice of the United States District
12  Court for the District of Arizona,
13      **IT IS FURTHER ORDERED** granting Plaintiffs' Motion to Strike Defendant's
14  subsequently filed pleading entitled "Objections to Intervenors' Separate Statement of
15  Facts." [Doc. # 71]
16      **IT IS FURTHER ORDERED** directing the Clerk of the Court to strike said
17  pleading from the file. [Doc. # 69]
18      DATED this 27th day of September, 2005.

_____
Roger G. Strand
Senior United States District Judge